[No. 1,928.]

## DAVID CALDERWOOD, AND ELIZABETH CALDERWOOD, HIS WIFE, *v.* HENRY PEYSER.

ORDER STRIKING NEW TRIAL STATEMENT FROM FILES.—Where a statement on motion for new trial was filed in time, but not served on the opposite party, and for this reason the Court, on motion, struck it from the files: *held*, that such striking from the files was error.

APPEAL FROM ORDER.—An appeal may be taken from an order made after judgment striking a statement on motion for a new trial from the files.

CASE OVERRULED.—Quivey v. Gambert, 32 Cal. 305, on the point that the Supreme Court has no jurisdiction of an appeal from an order made after final judgment, unless such order followed the judgment, not merely in time but also in logical sequence, overruled.

TIME FOR APPEAL FROM COUNTY COURT IN CASE APPEALED FROM JUSTICE'S COURT.—Where an action for unlawful detainer was originally commenced in April, 1863, before a Justice of the Peace, and afterwards appealed to the County Court, and while pending there the Acts of December 23d, 1863, and April 4th, 1864 (Stats. 1863-4, pp. 1, 399), for the transfer and changing of the original jurisdiction in such cases, took effect: *held*, that the jurisdiction of the County Court did not cease to be appellate, or become original; and that therefore an appeal from a judgment therein must be taken within ninety days.

SET-OFF OF EXECUTIONS—PARTIES MUST BE THE SAME.—An execution in favor of Peyser and against Calderwood cannot be set off against an

execution in favor of Calderwood and Douglass (his former wife) against Peyser—the apparent fact being that the parties to the two executions are not the same.

STATEMENT ON MOTION FOR NEW TRIAL NEVER TO BE STRICKEN OUT.— While a motion for a new trial may be denied, for failure to serve the statement on the opposite party, an order striking such statement from the files cannot be properly made under any circumstances. Such statement need not be served on the opposite party.

APPEAL from the County Court of the City and County of San Francisco.

The judgment involved in this appeal was in favor of plaintiffs and against defendant, and was entered on March 30th, 1868. Afterwards counsel for defendant moved for leave to offset an execution in favor of defendant and against the plaintiff David Calderwood, against the execution issued in this action in favor of plaintiffs, for their costs on a former appeal. The motion was denied April 13th, 1868. Defendant's statement on motion for new trial was struck from the files June 8th, 1868. The appeal from the order refusing to offset the executions was taken June 17th, 1868; the appeal from the judgment and order striking out statement was taken July 14th, 1868.

*E. A. Lawrence*, for Appellant.

By the operation of the new Constitution, and the Act of December 23d, 1863, transferring all cases pending in the old County Court into the new County Court, and the Act of April 4th, 1864, concerning forcible entries and unlawful detainers, this became a special case, over which the County Court only had original jurisdiction, and, as in all other original cases, the right of appeal from a judgment extended to one year.

The action of the Court in not settling the statement on motion for new trial, but in striking out, was in direct violation of the recent decision of this Court. (*Quivey* v. *Gambert*, 32 Cal. 304.)

*P. G. Buchan,* for Respondents.

The appeal from the judgment was not brought in time, for the reason that it was a judgment on appeal from an inferior Court. The operation of the new Constitution was not to make any difference in the case or to change its character.

The statement on motion for new trial was properly struck out, and the order striking it out was not an appealable one. The case of *Quivey* v. *Gambert,* 32 Cal. 304, is directly against the appellant.

By the Court, WALLACE, J.:

The earlier history of this case is to be found in 31 Cal. 333. Upon the return of the cause, after the order granting the new trial had been affirmed here, the defendant filed a plea *puis darrein continuance,* in which he set up: First, the judgment rendered in the action August 16th, 1865, as a bar—alleging it to be in full force and unsatisfied; second, that prior to the recovery of that judgment the female plaintiff, Elizabeth Douglass, had transferred to Calderwood one half the rents claimed in the action; third, that on July 28th, 1865, one Brooks commenced an action against David Calderwood, Elizabeth Douglass, and her husband, William J. Douglass, in the District Court of the Twelfth Judicial District, and after due proceedings, on the 18th day of June, 1866, obtained a decree to the effect that he was the owner in fee of the demised premises, and that the defendants in that action had no right, title, or interest therein, nor in the possession thereof, and enjoining them from the assertion of any right or title thereto against Brooks, the plaintiff therein, and that upon appeal the decree had been affirmed here (*Brooks* v. *Calderwood,* 34 Cal. 563); fourth, that Brooks was the landlord of the defendant at the time of the commence-

ment of the action against him in the Justice's Court by Calderwood and Elizabeth, his then wife; that the tenancy then existing had been terminated, and the possession of the demised premises had been surrendered to Brooks on May 10th, 1864, since which time the defendant had not held the possession thereof in anywise. A trial of the action was again had in the County Court, March 30th, 1868, and resulted in a judgment in favor of the female plaintiff, Elizabeth Douglass, for the possession of the premises and nine hundred and fifty-five dollars damages, with costs of action.

A motion for a new trial, made by defendant and supported by a statement filed, was not determined by the Court below—but the statement was stricken from the file upon the application of the plaintiff, because, though filed, it had not been served. The action of the Court in this respect is now presented for review, upon appeal taken from the order by which the statement was stricken from the files.

The first question to be considered concerns the appellate jurisdiction of this Court, for the respondent claims that it does not extend to the review of an order striking from the files of the Court below a statement placed there in support of a motion for a new trial, and there is no doubt that such was the view announced in *Quivey* v. *Gambert*, 32 Cal. 305, upon the authority of several adjudged cases in this Court, there enumerated. The general doctrine of those cases is, that "any special order made after final judgment" (Practice Act, Sec. 336, Subd. 3), to become the subject of an appeal here, must have followed the judgment, not in mere point of time of its entry, but that the order to be reviewed must, in some way, have depended upon the judgment itself, or have followed it in logical sequence (*Pendegast* v. *Knox*, 32 Cal. 73); that it must have "followed the judgment in the same line of proceedings" (31 Cal. 365), etc.

I am unable, however, to discover any reason upon which these distinctions can be supported. If there in reality be any, these cases have not pointed it out, but have stopped with simply announcing the supposed distinctions themselves.

Shortly after I came here the case of *Kimball* v. *Semple*, yet pending upon other points because of the disqualification of one of the Justices of this Court to set in the case, came before the Court for decision.

One of the points in that case concerned our appellate jurisdiction, and it arose substantially upon the following facts: Judgment had been rendered in the District Court in favor of Kimball, for the recovery of the possession of the premises there in controversy. A motion for a new trial had been made by the defendant, and denied by the Court, and an appeal having thereupon been brought to this Court from the order of denial, a judgment was subsequently rendered here to the effect that the order be affirmed. After the return of the cause to the District Court, Semple, the defendant, moved that Court to set aside its order denying the new trial, so that he might perfect the statement which had been filed in support of the original motion; the Court below entered an order that this motion be denied, and an appeal to this Court was thereupon brought. It will be seen that the order thus appealed from, like the one at bar, was "a special order made after final judgment," in the language of section three hundred and thirty-six, as well as of section three hundred and forty-seven of the Practice Act, and did not "follow the judgment," in the sense of being *dependent upon it.* The point thus raised was the same now under consideration, and the authorities upon which it was rested, the case of *Quivey* v. *Gambert* and the others already mentioned.

In the case of *Kimball* v. *Semple*, I said:

"I think that the views announced in those cases, in respect to the point now under consideration, ought not to be maintained. The appellate jurisdiction of this Court is declared by the Constitution to extend to all cases in equity, to all cases at law which involve the title or possession of real estate, etc. (Art. VI, Sec. 4.)

"The case at bar is one involving the title of certain real estate, and, as a case, is therefore clearly embraced within the appellate jurisdiction of this Court. A case is a state of facts which furnishes occasion for the exercise of the jurisdiction of a Court of justice; to the existence of such a case parties are necessary, also pleadings and proceedings, trials, orders, judgments, etc., usually follow. These together constitute the case, and when, as here, that case is itself one within the appellate jurisdiction of this Court, *any order* made therein by the Court below becomes part of it, and must consequently be subject to the power of this Court to review it.

"This is the view upon which we entertain an appeal from the final judgment itself, or the order denying or granting a new trial, for neither such a judgment nor such an order of themselves necessarily constitute the entire case, but are only *parts of it*, and may be considered in this Court at different times, and upon distinct appeals.

"By an examination of section three hundred and forty-seven, supra, it will be seen that certain enumerated orders made in a case, and which respectively concern a new trial, an injunction, an attachment, or proceedings in partition, constitute of themselves distinct subjects of appeal, whether entered *before* or *after* the rendition of final judgment. So, if any order, though not included within this enumeration, be made *before* the rendition of final judgment, it is reviewed here through the instrumentality of an appeal taken from

the *judgment itself;* and section three hundred and forty-seven declares that any special order made after final judgment shall also, *of itself*, be the subject of appeal. The necessity for this latter provision is apparent, when it is considered that an appeal from the judgment would only bring up the record of the proceedings resulting in the rendition of the judgment, and that such an appeal may have been taken, and even disposed of here, by affirmance or reversal, *before* the order complained of was made in the Court below; so that while an appeal from a judgment might in some instances be safely relied upon for the review of an order entered before its rendition, it would afford no reliable remedy against such an order only entered *subsequently* to its rendition. Accordingly, the statute allows an appeal to be taken directly from any special order made after final judgment, as the only safe and convenient method for its review. The statute declares such an order, made subsequently in point of time to the rendition of the judgment, to be the subject of a distinct appeal, and we are not at liberty to add that it must also be an order made in the direct line of the procedure. From an order *refusing* to *dissolve an attachment*, for instance, an appeal is given by *designation*, "from any special order made after final judgment;" a like appeal is as clearly given by *definition*, and I do not see why we might not upon some idea of the particular line of procedure pursued below refuse to entertain an appeal in the one case with as much propriety as in the other.

"For other reasons, too, I think that the rule laid down by the cases cited upon this point ought not to be maintained; the rule itself is so vague and indefinite that its application to cases coming here on appeal would, in many instances, be productive of the utmost confusion and the most profitless preliminary discussion. What is the required line of procedure? In what way must the order depend upon the judgment? Or, when may it be said to

follow the judgment in the same line of proceeding? Can there be said to be any uniform line of proceeding at all, or one that is capable of such delineation as would make it safe or reliable as a boundary line between orders within and orders without the appellate jurisdiction of this Court? Nor does the rule in question, by its practical operation upon the substantial rights of parties, commend itself to my judgment. For under that operation a special order, if made after the rendition of judgment, and made in a case, too, within our appellate jurisdiction, though it might be clearly erroneous, and perhaps of the most oppressive and ruinous character, is nevertheless effectually withdrawn from revision in this Court, because, forsooth, it was not entered in a particular line of procedure? Its other errors are not to be inquired into here, because it has the merit of having been irregularly entered in the Court below. The case of *Quivey* v. *Gambert*, 32 Cal. 304, is one that may be referred to as an illustration of this view. In that case Gambert had made a motion for a new trial, and filed a statement in its support. The Court below struck this statement from its files. Gambert appealed from the order striking out the statement. He had no other effective remedy, for the order having removed his statement from the files, his motion for a new trial was necessarily left wholly unsupported, and had he appealed from an order denying the motion for a new trial, the order in that condition of the record must have been affirmed here.

"Upon considering the case of *Quivey* v. *Gambert*, this Court arrived at the conclusion that the Court below had erred in striking the statement from the files; but, on the authority of *Leffingwell* v. *Griffin*, *Ketchum* v. *Crippen*, etc., and because the erroneous order striking out the statement was not entered in the ordinary line of proceedings had on motion for a new trial, it held that it had *no jurisdiction* to correct this demonstrated error, because it could not enter-

tain an appeal for that purpose. This Court, however, in dismissing the appeal for the supposed want of jurisdiction, *advised* the Court below to set aside its order striking out the statement, and to allow the motion for a new trial to proceed. This advice the Court below was, of course, at entire liberty to disregard—and, if it had chosen to do so, the consequence would have been that Gambert would, as the result of an erroneous order entered in the Court below, have been deprived of the benefit of his motion for a new trial, and placed beyond the power of this Court to relieve him from the consequences of that error."

This was the substitution of a sort of *jus precarium* to supply the place of the constitutional authority which rightfully belonged to this Court, but which it had thrown aside in the assertion of a distinction, in itself impossible of maintenance, and which, if maintained, would be productive of nothing but confusion and embarrassment in the administration of justice.

These general views, as expressed in the Kimball case, received the assent of a majority of the Court at the time, and have since been followed here (*Morris* v. *De Celis*, 41 Cal. 331; *Dooley* v. *Norton*, 41 Cal. 439). The case of *Quivey* v. *Gambert*, and the others upon which it is based, must, therefore, be considered as overruled upon the question of the appellate jurisdiction of this Court to review "special orders made after final judgment."

The Court below manifestly erred in striking the statement from its files, and its order in that respect must be reversed.

An appeal from the judgment is also presented by the record, but objection is taken by the respondent that it was not brought within the time prescribed by law, and should, therefore, be dismissed.

The judgment was rendered, as we have seen, the 30th

day of March, 1868, and the appeal therefrom was taken on the fourteenth day of July following. The action having been commenced originally in the Court of a Justice of the Peace, a judgment against the defendant was rendered there in May, 1863, and during the same month the case reached the County Court, by appeal. If the County Court, when it rendered the judgment in question, in March, 1868, is to be considered as the Court in which the action was commenced, then, the appeal having been taken within one year after the rendition of that judgment, the objection that it was taken too late cannot prevail. (Practice Act, Sec. 336, Subd. 1.) But if, upon the other hand, the judgment rendered by the County Court is to be considered as "a judgment rendered on an appeal from an inferior Court," the appeal, not having been taken within ninety days after judgment rendered, is too late, and it must be dismissed. (Practice Act, Sec. 336, Subd. 2.)

Unquestionably the jurisdiction which the County Court first obtained over this cause, through the appeal taken on the 14th day of July, 1868, was appellate, and not original in its nature.

It is argued, however, that while the cause was yet pending in the County Court its jurisdiction over it ceased to be appellate and became original in its character. This change is said to have been effected by an Act, approved December 23d, 1863, providing for the transfer of cases to the Courts established by the constitutional amendments of 1862 (Acts 1863–4, p. 1), and by the Act of April 4th, 1864, concerning causes of action in forcible entries and unlawful detainers, as existing in 1863 (Acts 1363–4, p. 399), but upon examination of those Acts I am unable to see that any such change was effected thereby.

It is expressly declared in the first named Act, section six, that its true intent is that no suit, cause, or proceeding which may be pending in any Court shall be in anywise discontin-

ued, but that "the same shall in all respects be proceeded in as though no change had taken place."

The provisions of the Act of December, 1863, irrespective of any question of their constitutionality (and none is made), place proceedings in forcible entry in all cases existing prior to December 31st, 1863, *in statu quo* "as to any act done or right accrued or established, or cause of action which existed, and as to any suit or proceeding upon or for the same, pending or in judgment," etc., except that no fine should be imposed or damages trebled.

The judgment of March 30th, 1868, was, therefore, "rendered on an appeal from an inferior Court," and the appeal therefrom to this Court, not having been taken within the time prescribed for appeals from judgments of that character, should, for that reason, be dismissed.

The appeal is taken lastly from an order refusing to set off an execution in favor of the defendant, and against David Calderwood, against an execution in favor of David Calderwood and Elizabeth Douglass, formerly Calderwood. The apparent facts being that the parties to the two executions are not the same, there was no error in denying the motion.

The appeal from the judgment is dismissed; the order denying the motion to set off the executions is affirmed; and that striking the statement of the defendant from the files is reversed, and the cause remanded for further proceedings on the motion for a new trial.

RHODES, C. J., concurring specially:

I concur in the judgment, except that portion which sustains the appeal from the order striking out the statement on new trial, and from that portion of the judgment I dissent, as I am of the opinion that *Quivey* v. *Gambert,* and the cases decided on the authority of that case, state the correct rule.

[A petition for a rehearing was afterwards filed, on behalf of the respondents, and in response thereto the following opinion was rendered:]

By the Court, Wallace, J.:

We understood from the record in this case, and understand now, that the Court below struck from its files the statement placed there by the defendant in support of the motion for a new trial. We understood, too, and still understand from the record, that the ground upon which the order was made by the Court below was that the statement, though filed, had never been served upon the plaintiff's attorney. We reversed this order because we held, as was held in *Quivey* v. *Gambert*, 32 Cal. 305, that such an order cannot be supported if objected to below. Even though service of a statement on motion for new trial had been required by a rule of the Court, or by statute (which it is not), the Court, while it might deny the motion for a new trial for failure to serve it (if the opposite party made it an objection to granting the motion), could not properly strike the statement from the files.

The petition for a rehearing is founded upon a total misapprehension of the decision made here, as well as of the ground upon which it rests, and it is therefore denied.